**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **ROCHESTER MEDICAL CORP.,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| vs. | § | No. 5:04-CV-60 |
| | § | |
| **C.R. BARD, INC., et. al.,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

<u>**ORDER**</u>

  Before the Court are Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404(a) (Doc. No. 20) and Defendants C.R. Bard, Inc.'s, Tyco International (US) Inc.'s and Tyco Healthcare Group's Joint Motion to Dismiss the Conspiracy Claims of Plaintiff's First Amended Complaint, or, In the Alternative, For a More Definite Statement (Doc. No. 45). The Court held a hearing on these matters on February 3, 3005. The Court, having considered said motions, responses, and all other relevant argument, pleadings and papers, finds Defendants' motion to transfer not well taken and should be **DENIED**. Likewise, the Court finds that Defendants Bard and Tyco's motion to dismiss is not well taken and should be **DENIED**.

**I.  BACKGROUND**

  Rochester Medical Corporation ("Plaintiff") is a Minnesota corporation with its principal place of business in Stewartville, Minnesota. It manufactures and markets urological and incontinence devices for use in the healthcare industry. Relevant here, Plaintiff manufactures Foley catheters – catheters with an inflatable balloon tip used to provide drainage through the urethra

EXHIBIT A

during surgery and post surgical recovery – which are designed to reduce infections. Defendants C.R. Bard, Inc.("Bard") and Tyco International (US), Inc. and Tyco Healthcare Group, L.P (collectively, "Tyco") also manufacture Foley catheters and other urological products. Defendants Novation, L.L.C. and VHA, Inc. (collectively "Novation") and Premier, Inc. and Premier Purchasing Partners, L.P. (collectively "Premier") are group purchasing organizations ("GPOs") that have contracted with the defendant manufacturers and many others to supply products to their member hospitals, which may elect to buy catheters under these contracts.

Plaintiff brought this cause of action against Bard, Tyco, Novation, and Premier (collectively "Defendants") alleging antitrust violations, tortious interference with business relations, Lanham Act violations, and civil conspiracy. Plaintiff asserts that Defendants combined or conspired to eliminate or lessen competition and to acquire and maintain monopoly power among hospitals and healthcare providers. It seeks to recover injunctive relief and damages arising out of Defendants' alleged conduct.

## II.  DEFENDANTS' MOTION TO TRANSFER

### A.  SUMMARY OF ARGUMENTS

Defendants seek a transfer of this case from its current setting in the Texarkana Division to the District of Minnesota. Defendants maintain that the Eastern District of Texas has little connection to the facts at issue in this case, while the District of Minnesota is intimately connected. In response, Plaintiff details specific acts on the part of both Plaintiff and Defendants occurring in the Eastern District of Texas which are typical of, and essential to, both parties' ordinary business operations. In addition, Plaintiff offers evidence that much of the alleged anticompetitive conduct at issue in this case was, and is, directed to and impacts consumers in the Eastern District of Texas.

**B.     STANDARD OF REVIEW**

Section 1404(a) provides, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under section 1404, the defendant bears the burden of demonstrating to the Court that it should, in its sound discretion, decide to transfer the case. *See Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (holding that the decision to transfer rests within the sound discretion of the court); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) (holding that the defendant bears the burden of demonstrating that the action should be transferred). In determining whether to grant a motion to transfer under section 1404(a), a district court must balance the private convenience interests of the litigants and the public interests in the fair and efficient administration of justice. *See Koehring Co. v. Hyde Const. Co.*, 324 F.2d 295, 297 (5th Cir. 1963) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947); *In re Triton Secs. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999); *Robertson v. Kiamichi RR Co.*, 42 F. Supp. 2d 651, 655 (E.D. Tex. 1998).

The Supreme Court has noted that § 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). The defendant must first demonstrate that the plaintiff could have brought the action in the transferee court, *see, In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004), and then carry a strong burden to prove that the convenience factors clearly favor such a change. *See In re Triton.*, 70 F. Supp.2d at 688. The relevant venue factors must be established by affidavit, deposition, or otherwise as opposed to making unsupported assertions. *Id*.

The private interest, the convenience of the litigants, is comprised of the following factors:

(1) plaintiff's choice of forum, (2) convenience and location of witnesses and the parties, (3) cost of obtaining the attendance of witnesses/cost of trial, (4) place of the alleged wrong, (5) accessibility and location of sources of proof, and (6) possibility of delay and prejudice if transfer is granted. *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 771 (E.D. Tex. 2000) (identifying the origin of the factors as *Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). The public interest is comprised of the following factors: (1) administrative difficulty, (2) localized interests in resolving localized controversies, (3) jurors, and (4) conflict of laws. *Id.*

### C.    ANALYSIS

#### 1.    Jurisdiction

The Court must first determine whether Plaintiff could have sued Defendants in the District of Minnesota. Plaintiff's federal law claims are grounded in antitrust. The special antitrust venue provisions are contained in Sections 4 and 12 of the Clayton Act. *See* 15 U.S.C. §§ 15, 22 (2000). Section 4, which applies to both individuals and corporations, allows for private causes of action to be brought in any district "in which the defendant resides or is found or has an agent." 15 U.S.C. § 15(a). Further, Section 12 provides that a suit against a corporation "may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business." *Id.* § 22. Moreover, Section 12 was enacted to enlarge the venue provisions of Section 4 of the Clayton Act so that parties injured by violations of the antitrust laws could more easily seek redress in the courts. *See United States v. Scophony Corp.*, 333 U.S. 795, 808 (1948). Thus, making it possible to sue a corporation wherever it "transacted business" as well as in those districts where the corporation could be "found." *See Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 372 (1927).

In the present matter, the parties do not contest that the District of Minnesota is a proper venue wherein the action could have originally been brought. Therefore, while the Court does not conclude that the District of Minnesota is a proper venue, it does find that Plaintiff could have sued Defendants in the District of Minnesota for the purpose of deciding the present motion.

**2.     Private Interest Factors**

**a.     Plaintiff's Choice of Forum**

Defendants contend that Plaintiff's choice of forum should be given little or no weight in deciding whether to transfer this action to the District of Minnesota. They assert that the Fifth Circuit's recent decision in *In re Volkswagen AG,* 371 F.3d 201 (5th Cir. 2004), "calls into question the continued validity of plaintiff's forum choice as a factor for analysis, when another more convenient forum exists." Doc. No. 20, Defendant's Motion to Transfer at 10. Notwithstanding such contention, Defendants' argument does little more than bring to light the conundrum of this factor as applied to a court's convenience analysis – a plaintiff's choice of forum always weighs in favor of retaining the case; it is only when the other factors point toward transfer that plaintiff's choice is negated and transfer appropriate. In essence, a plaintiff's choice is always a factor to the extent that it represents the defendant's high burden in establishing transfer. When the burden is not met, the court defers to the plaintiff's choice of forum. While the Court could go into a detailed analysis of the *Volkswagen* opinion, and, likewise, regurgitate a string cite of case law concerning the different degrees of deference accorded a plaintiff's forum choice, suffice it to say that this factor is a well established piece of the puzzle. And the Court finds nothing in *Volkswagen* that would cast doubt to the same.

Therefore, although not dispositive, Plaintiff's choice of forum is entitled to deference. *In*

*re Horseshoe Entm't,* 337 F.3d 429, 434 (5th Cir.2003). Further, the Court accords less than the customary degree of deference to the plaintiff's forum selection only when the operative facts of the dispute occur outside plaintiff's chosen forum, *i.e.*, no factor weighs in favor of retaining the suit in the chosen forum. *See Day v. Burlington N. Santa Fe Ry. Co.,* 196 F.Supp.2d 435, 436 (E.D.Tex.2001) (according less deference to plaintiff's choice of forum when none of the other factors weighed in favor of retaining case); *see also Lands v. St. Louis S.W. R.R. Co.,* 648 F.Supp. 322, 325 (E.D.Tex.1986) (same). This is consistent with the holding in *Volkswagen*. *See Volkswagen,* 371 F.3d at 205 (holding that the district court abused its discretion in denying the defendant's transfer motion when the court failed to consider significant convenience factors).

Notwithstanding, Defendants' demonstration that Plaintiff does not reside in the Eastern District of Texas has little effect on the deference afforded Plaintiff's choice of forum in this matter. *See Z-TEL Communs., Inc. v. SBC Communs., Inc.*, 331 F. Supp. 2d 567, 570 (E.D. Tex. 2004) (holding that the plaintiff's residence "does not usefully inform the Court's analysis" regarding the deference given to the plaintiff's forum choice in an action brought under the federal antitrust statute). As mention above, the venue provisions of the Clayton Act direct the courts to consider a defendant's residence in determining a motion to transfer venue and make no mention of the plaintiff's residence. 15 U.S.C. § 22; *see also id.* The Plaintiff has chosen the Texarkana Division of the Eastern District of Texas as the forum in which it wishes to pursue its lawsuit. At a minimum, this choice is a factor which weighs against transfer.

      **b.**    **Situs of Material Events**

The place of alleged wrong does not support transfer to the District of Minnesota. Based on the nature of this action, antitrust, Plaintiff has alleged violations throughout the country. The GPO

contracts at issue are effective nationwide and account for sales throughout the United States. As such, the Court finds that there is no one central place where the alleged wrongful conduct occurred. If there is no centralized location where the alleged wrongful conduct occurred, "then, as long as the plaintiff brings its action in a forum where the alleged [conduct] is occurring, that choice should not be undermined by allegations that infringing activities occur throughout the country." *Cummins-Allison Corp. v. Glory Ltd.*, 2004 WL 1635534, *6 (E.D. Tex. 2004); *see also In re Triton,* 70 F. Supp. 2d at 691 (holding that the place of the alleged wrong is not limited to one location when there is "nationwide public dissemination of information"). Thus, this factor does not support transfer because the alleged wrong occurred nationwide, including, the Eastern District of Texas.

### c.  Convenience of Witnesses

As both parties agree, the convenience of witnesses is a critical factor in deciding a motion to transfer venue. *See id.* at 678. Specifically, the Court looks to the inconvenience afforded non-party witnesses. *Id.* "As the party seeking transfer, Defendants must clearly specify the key witnesses to be called and make a general statement of what their testimony will cover." *Id.* at 690 (citing *Fletcher v. Southern Pacific Transp. Co.,* 648 F.Supp. 1400, 1402 (E.D.Tex.1986) (citing *Young,* 601 F.Supp. at 401-402).

Defendants argue that "all important third-party witnesses are located out-of-district and would be required to travel to Texarkana." Doc. No. 20 at 8. However, they fail to establish how this assertion supports transfer to Minnesota. In this matter, there is no single place where a majority of witnesses reside. In fact, Defendants evidence refers to employees and possible witnesses from Georgia, Texas, Michigan, North Carolina, South Carolina, Iowa, Pennsylvania, Minnesota, Massachusetts, Virginia and others "scattered from California to New York." Doc. No. 20 at Ex. B

¶ 6. Moreover, the only Minnesota resident Defendants refer to is a member of Novation's current 2004 Nursing and Clinical Practice Council and, therefore, could be compelled to travel to Texarkana by Novation. Doc. No. 20 at Ex. C ¶ 7.; *see also Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992). The Court finds that Defendants have not carried their burden as to the convenience of witnesses.

### d. Convenience of the Parties

Here, the Plaintiff is located in Minnesota and the Defendants are located in New Jersey, Delaware, California, Texas and Massachusetts. Defendants assert that Minnesota would be a more convenient forum for the Plaintiff. However, Plaintiff's inconvenience is not a consideration. *Cummins-Allison*, 2004 WL 1635534 at *5 (holding that the Illinois plaintiff's inconvenience is irrelevant with regard to keeping the case in Texas); *See Coons*, 533 F.Supp. at 400 (Defendant's heavy burden may not be overcome by the plaintiff's inconvenience in suing away from his home district). Defendants do not assert why Minnesota is more convenient for their corporations. They will face the same burden and cost of transporting documents and witnesses whether the case is tried in Texas or Minnesota. Thus, Defendants have failed to prove that the convenience of the parties supports transfer.

### e. Cost of Attaining Witness and Cost of Trial

The Defendants have not provided any rationale basis as to how the cost of obtaining witnesses for trial and/or the cost of trial weighs in favor of transfer. Instead, Defendants focus on the convenience and cost associated with Plaintiff's case. This is not a consideration the Court regards in considering transfer.

### f.  Accessibility and Location of Sources of Proof

Both parties agree that the location of documents is entitled to little weight in the Court's transfer analysis. In fact, this Court has previously noted that this factor does not become important unless the documents are so voluminous that their transport constitutes a major undertaking. *In re Triton*, 70 F. Supp. 2d at 690. Defendants have not shown that the transport of Plaintiff's document is such a major concern. Moreover, they provide no evidence as to how Minnesota would be more convenient for the transfer of documents from each of Defendants locations across the country.

### g.  Delay or Prejudice

When the cause action is still in the early stages of litigation, any delay resulting in the transfer to the proper forum should not prejudice either party. *Ruth v. KLI, Inc.*, 143 F. Supp. 2d 696, 698 (E.D. Tex. 2001). Here, the action is in early stages of litigation, and delay should not prejudice either party.

### 2.  Public Interest Factors

The Court finds that the public interest weighs in favor of having localized controversies resolved at home. However, the events of this action occurred nationwide. While there is a strong connection between the lawsuit and the District of Minnesota, this does not negate the public interest related to the Eastern District of Texas. Thus, the public interest factors do not weigh in favor of transfer.

### D.  CONCLUSION

Based on the foregoing analysis, the Court finds that Defendants have not met their burden to require transfer of this matter to the District of Minnesota. Although the District of Minnesota has strong ties to the Plaintiff in this matter, it has chosen the Eastern District of Texas to litigate this

matter and Defendant have not established such inconveniences that should disturb this choice. Thus, Defendants' motion to transfer should be denied.

### III.  DEFENDANTS' MOTION TO DISMISS

A.  SUMMARY OF ARGUMENT

Defendants bring this joint motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. They assert that Plaintiff's Amended Complaint does not set forth sufficient facts to support its claims of conspiracy. Specifically, Defendants challenge Counts IV. A, IV. B, and IV. F of Plaintiff's Amended Complaint. They contend that these counts do not identify which of the Defendants allegedly conspired with which or what conduct was done in concert, thereby, denying Defendants the ability to adequately defend the allegations.

B.  STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include only a "short and plain statement of the claim" whose purpose is to give defendant fair notice of the nature and substance of the claim. *See Conley v. Gibson,* 355 U.S. 41, 45 (1957). And Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes defendants to test the legal sufficiency of a complaint by filing a motion to dismiss on the ground that the complaint fails to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). The Court may grant a 12(b)(6) motion only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. The Court thus accepts as true all well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *See Associated General Contractors v. California State Council of Carpenters,* 459 U.S. 519, 525 (1983). The strict standard applied to 12(b)(6) motions is not, however, without its limits. In order to survive a

12(b)(6) motion, a complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *See In re Plywood Antitrust Lit.,* 655 F.2d 627, 641 (5th Cir.1981), *cert. dismissed,* 462 U.S. 1125 (1983). Moreover, the Court will not assume facts that the plaintiff has not alleged and is not required to accept the legal conclusions either alleged or inferred by the plaintiff from the pleaded facts. *McCormack v. NCAA,* 845 F.2d 1338, 1343 (5th Cir.1988).

**C.   ANALYSIS**

This Court has previously held that in an antitrust case, "a plaintiff must allege 'sufficient facts to support a cause of action under the antitrust laws.' " *Lone Star Milk Producers, Inc. v. Dairy Farmers of America, Inc.,* 2001 WL 1701532, *4 (E.D. Tex. Jan. 22, 2001) (quoting *TV Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d 1022, 1024 (10th Cir. 1992). And a plaintiff must plead sufficient facts corresponding to each element in an antitrust claim. *Municipal Utilities bd. of Alberville v. Alabama Power Co.*, 934 F.2d 1493, 1501 (11th Cir. 1991). However, such claims do not necessitate a heightened pleading standard. *See Lone Star Milk Producers,* 2001 WL at *4. "Provided the plaintiff has described a defendant's practice in a manner consistent with its antitrust theory, the court considers only whether other allegations made in the complaint undermine the claim." *Retractable Tech., Inc. v. Becton Disckinson,* C.A. 5:01-CV-36 (E.D. Tex. Aug. 2, 2002) (citing *Hammes v. AAMCO Transmissions, Inc.,* 33 F.3d 774, 782 (7th Cir. 1994). The Court will not dismiss the claim where relief is available under some viable antitrust theory. Id.

Defendants assert that Plaintiff's First Amended Complaint fails to state a claim for conspiracy under the federal antitrust laws. Because Plaintiff's federal antitrust claim arise under

Section 1 of the Sherman Act, the Court analyzes the sufficiency of Plaintiff's conspiracy claim under it provisions. To prevail under Section 1 of the Sherman Act, a plaintiff must establish a "contract, combination ... or conspiracy" that unreasonably restrains trade. 15 U.S.C. § 1. As the Supreme Court has stated:

> The Sherman Act contains a "basic distinction between concerted and independent action." The conduct of a single firm is governed by § 2 alone and is unlawful only when it threatens actual monopolization. ... Section 1 of the Sherman Act, in contrast, reaches unreasonable restraints of trade effected by a "contract, combination ... or conspiracy" between separate entities. It does not reach conduct that is "wholly unilateral." Concerted activity subject to § 1 is judged more sternly than unilateral activity under § 2. Certain agreements, such as horizontal price fixing and market allocation, are thought so inherently anticompetitive that each is illegal per se without inquiry into the harm it has actually caused. Other combinations, such as mergers, joint ventures, and various vertical agreements, hold the promise of increasing a firm's efficiency and enabling it to compete more effectively. Accordingly, such combinations are judged under a rule of reason, an inquiry into market power and market structure designed to assess the combination's actual effect. Whatever form the inquiry takes, however, it is not necessary to prove that concerted activity threatens monopolization.

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984) (internal citations omitted). Because proving concerted action is essential to establishing Section 1 liability, vague allegations of conspiracies are subjection to dismissal. *See Futurevision Cable Sys. v. Multivision Cable TV Corp.,* 789 F. Supp. 760, 773 (S.D. Miss. 1992) (dismissing Section 1 claim, the court found that "not only are no facts alleged to demonstrate the conspiracy, but the specific participants of the conspiracy are not even identified"), *aff'd without op.,* 986 F.2d 1418 (5th Cir. 1993). However, plaintiffs may survive a motion to dismiss even if they fail to identify all of the conspirators in the alleged conspiracy. *See General Refractories Co. v. Stone Container Corp.,* 1999 WL 14498 (N.D. Ill. 1999) (express identification of coconspirators in alleged nationwide price-fixing conspiracy not necessary when plaintiffs had narrowed the list sufficiently to notify defendants

of nature of claims). Moreover, an agreement in this sense, a Section 1 agreement, may be found when "the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *American Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946).

The elements of Plaintiff's civil conspiracy claim are 1) two or more persons; 2) an object to be accomplished; 3) a meeting of minds on the object or course of action; 4) one or more unlawful, overt acts; and 5) damages proximately caused by the conspiracy. *Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.,* 300 F.3d 620, 635 (5th Cir.2002); *Peavy v. WFAA-TV, Inc.,* 221 F.3d 158, 172 (5th Cir.2000), *cert. denied,* 532 U.S. 1051 (2001). Defendants argue that Plaintiff's conspiracy claim is defective because Plaintiff has not pled sufficient facts to establish a conspiracy. Moreover, they assert that the conspiracy claims must fail as a matter of law because Plaintiff's complaint does not support a single conspiracy among the seven defendants, which is the only conspiracy alleged. The Court does not agree.

Although Plaintiff states the elements of conspiracy in a conclusory fashion, *See* Complaint ¶ 31, its pleading as a whole is sufficient to plead a civil conspiracy cause of action. *See Guidry v. United States Tobacco Co.,* 188 F.3d 619, 631-32 (5th Cir.1999) ("a general allegation of conspiracy without a statement of the facts constituting that conspiracy is only an allegation of a legal conclusion and is insufficient to constitute a cause of action"); *Delta Brands, Inc. v. Danieli Corp.,* 2003 WL 22255699, *7 (N.D.Tex.2003) (same). A party pleading conspiracy must provide sufficient information to show that a valid claim of relief has been stated, and to enable the opponent to prepare responsive pleadings. *Guidry,* 188 F.3d at 632. For these reasons, the Court deems Plaintiff's conspiracy claims sufficiently pled.

>Plaintiff's complaint states:
>
>Defendants Novation and Premier are administrative "middlemen," the conduit between medical device manufacturers and healthcare providers, also known as "Group Purchasing Organizations" or "GPOs." In practice, Defendant GPOs' true function in the medical device market is to deliver substantial market share to monopolistic medical device manufacturers, such as Defendant Manufacturers, in exchange for substantial "administrative fees" and other forms of remuneration and benefits.

(Doc. No. 35) Plaintiff's First Amended Complaint ¶ 20 (hereinafter "Complaint"). Additionally, Plaintiff's complaint allege contractual arrangements between Defendants which have foreclosed Plaintiff and others from entering the relevant market. *Id.* at ¶¶ 24-26. These allegations alone establish each element of a conspiracy outlined above. Reduced to their simplest terms, the complaint alleges that (1) the Manufactures and GPOs agreed to (2) deliver substantial market share (3) by contact (4) in violation of antitrust laws (5) which prevented Plaintiff from entering the market. Thus, the Court finds this language sufficient to meet the liberal pleading requirements to withstand a motion to dismiss. While the complaint does not specifically point out actions taken by the Defendants to jointly conspire, the Court does not restrict the pleadings to such a narrow conspiracy claim. The Court finds Defendants could easily surmise the basis for the Plaintiff's antitrust conspiracy claims.

**D.    CONCLUSION**

When viewed in the light most favorable to Plaintiff, the Court finds that Plaintiff's pleading adequately states a cause of action for conspiracy. Therefore, Defendants' motion to dismiss the conspiracy claims should be denied.

### IV. CONCLUSION

Based on the foregoing analysis, it is hereby **ORDERED** that Defendants' Motion to

Transfer Venue Under 28 U.S.C. § 1404(a) (Doc. No. 20) is hereby **DENIED.**

It is, further, **ORDERED** that Defendant C.R. Bard, Inc.'s, Tyco International (US)Inc.'s and Tyco Healthcare Group's Motion to Dismiss the Conspiracy Claims of Plaintiff's First Amended Complaint, or, In the Alternative, For a More Definite Statement (Doc. No. 45) is **DENIED**.

**SIGNED this 25th day of February, 2005.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE