

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -- GENERAL**

Case No. SACV 03-1329-JVS(MLGx)        Dated: February 23, 2004

Title: APPLIED MEDICAL RESOURCES CORP. v. JOHNSON & JOHNSON

PRESENT:    HONORABLE JAMES V. SELNA, UNITED STATES DISTRICT JUDGE

       Karla J. Tunis                          William Stephens
       Courtroom Deputy                   Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

       David Marcus                          Robert Bloch
       Stephen Susman                    John Treece
       David Orozco

PROCEEDINGS:    Defendant Novation LLC's Motion to Dismiss the First Amended Complaint. (Fld 1-5-04)

      Cause called and counsel make their appearances. The Court's tentative ruling is issued. Counsel make their arguments. The Court DENIES the defendant Novation's motion to dismiss and rules in accordance with the tentative ruling as follows:

      Defendant Novation L.L.C. ("Novation") moves the Court to dismiss the First Amended Complaint ("FAC") as against Novation for failure to state a claim upon which relief can be granted. Fed. R. Civ. P 12(b)(6). The Motion is made on the grounds that Plaintiff Applied Medical Resources Corporation ("AMR") cannot bring a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, against an agent for buyers such as Novation where there is no allegation that: (1) Novation had a motive or intent to harm competition; or (2) the allegedly exclusionary contract entered into by Novation foreclosed enough of the relevant markets to adversely affect competition.

I.     Background.

      AMR's Complaint alleges the following facts, which the Court assumes are true for the purposes of this Motion to Dismiss. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). AMR manufactures and markets trocars and clip appliers, both of which are endomechanical instruments used in laparoscopic surgery. (FAC, ¶ 1, 13–17.) Defendant Ethicon Endo-Surgery ("EES"), a subsidiary of Defendant Johnson & Johnson Healthcare

Systems ("Johnson & Johnson"), is one of AMR's competitors in the markets for trocars and clip appliers. (Id. at ¶ 2.) Defendant Ethicon, Inc. ("Ethicon"), also a subsidiary of Johnson & Johnson, manufactures sutures. (Id.) AMR alleges that Johnson & Johnson, by bundling the sale of trocars and clip appliers with the sale of sutures, has leveraged its monopoly in the market for sutures to establish a monopoly in the markets for trocars and clip appliers. (Id. at ¶¶ 2, 37.) AMR further alleges that Johnson & Johnson's conduct has foreclosed a substantial portion of the markets for trocars and clip appliers from competition, has harmed AMR, and has had anti-competitive effects, including: (1) forcing purchasers of trocars and clip appliers to pay higher prices for inferior products; (2) artificially creating barriers to entry in the markets for trocars and clip appliers; (3) substantially reducing the number of competitors in the trocar market since 1999; and (4) stifling innovation. (Id. at ¶¶ 4, 30, 65–68.)

AMR's lawsuit specifically challenges Johnson & Johnson's exclusive dealing contracts with hospital group purchasing organizations ("GPOs"), integrated health networks, integrated delivery networks, and individual hospitals. (Id. at ¶ 3.) Pursuant to the contracts, hospitals receive the lowest prices from Johnson & Johnson on sutures, trocars, and clip appliers only if they agree to purchase 90% of their sutures and 80% of their endomechanical products from the company. (Id. at ¶¶ 3, 38.) In addition, hospitals that adhere to the exclusivity requirements of the contracts receive "loyalty rebates." (Id. at ¶ 3.) As such, hospitals that purchase trocars and clip appliers from competitors of Johnson & Johnson like AMR forfeit rebates, face a loss of discounts on clip applies and trocars, and lose their discounts on sutures.[1] (Id. at ¶ 4.) According to AMR, Johnson & Johnson's contracts with GPOs and other hospital groups make it impossible for entities like AMR to compete in the markets for trocars and clip appliers.[2] (Id. at ¶¶ 2, 4.)

Defendant Novation is one of the two largest GPOs in the United States. (Id. at ¶ 45.) GPOs negotiate contracts with suppliers on behalf of their member hospitals, and receive "a significant portion of their revenues" from payments made by vendors that are based on purchases made by member hospitals pursuant to the terms of the negotiated contracts. (Id. at ¶ 32.) Novation's more than 2,200 member hospitals allegedly purchase 35% of the trocars and clip appliers sold every year in this country. (Id. at ¶¶ 45, 47.) Its purchases of trocars and clip appliers, when combined with the those of Premier, another one of the largest GPOs in the United States, comprise approximately 65% of the market. (Id. at ¶ 45.)

---

[1] The potential loss of discounts on sutures is allegedly a substantial deterrent, because of the large volume of sutures that hospitals use. (FAC, ¶ 4.)

[2] Regarding the competitors' relative market power, AMR alleges that: (1) Johnson & Johnson's approximate share of the relevant market for trocars has been in excess of 65% at all times relevant to this action, increasing to over 75% by 2002; (2) its approximate share of the relevant market for clip appliers has been in excess of 60%, increasing to over 65% by 2002; and (3) its approximate share of the relevant market for sutures has been over 80%. In contrast, AMR's approximate share of the relevant market for trocars is approximately 2%, and its approximate share of the relevant market for clip appliers is 1%.

Novation is a party to one of the allegedly exclusionary contracts described above (id. at ¶ 3, 31, 47–52), and has been sued by AMR in this action pursuant to Section 1 of the Sherman Act (id. at 83–87). Its Motion to Dismiss is currently before the Court.

II.     Discussion.

In reviewing a motion to dismiss, all of the plaintiff's allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party. Everest & Jennings v. Am. Motorists Ins. Co., 23 F. 3d 226, 228 (9th Cir. 1994). Dismissal for failure to state a claim is proper only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957). This stringent standard is particularly applicable in antitrust actions, especially those in which foreclosure of competition in a given market is at issue. See Virgin Atlantic Airways v. British Airways, 872 F. Supp. 52, 66 (S.D.N.Y. 1994) (holding that foreclosure is a "uniquely factual inquiry" that requires analysis that is "inappropriate on the face of the complaint"). As the Ninth Circuit has noted, "dismissals for failure to state a claim are disfavored in antitrust actions." Clayco Petroleum Corp. v. Occidental Petroleum Corp., 712 F.2d 404, 406 (9th Cir. 1983), cert. denied, 464 U.S. 1040 (1984). In order for an antitrust complaint to survive a motion to dismiss, it therefore need only contain "sufficient facts so that each element of the alleged antitrust violation can be identified." Municipal Utilities Bd. of Albertville v. Alabama Power Co., 934 F.2d 1493, 1501 (11th Cir. 1991).

In this case, in order for AMR to state a Section 1 claim against Novation, it need only plead sufficient facts to allege: (1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint of trade. 15 U.S.C. § 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States . . . is declared to be illegal."); see also Neeld v. NHL, 594 F.2d 1297, 1298 (9th Cir. 1979) ("Because nearly all contracts, combinations or other concerted actions restrain someone to some greater or lesser degree, Section 1 has been read to prohibit only unreasonable restraints."). The Court finds that Novation has met its burden. The first element of the Section 1 cause of action is obviously pled, and Novation makes no argument to the contrary. Regarding the second element, whether the contract between Johnson & Johnson and Novation constitutes an unreasonable restraint of trade is analyzed under the rule of reason in this case, meaning that "[t]he focus is on actual effects that the challenged restraint has had on competition in a relevant market," Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1410 (9th Cir. 1991), and one must evaluate whether the "anticompetitive aspects of the challenged practice outweigh its procompetitive effects," Paladin Assocs., Inc. v. Montana Power Co., 328 F.3d 1145, 1156 (9th Cir. 2003). One criterion used to measure reasonableness is whether competition has been foreclosed in a substantial share of the relevant market. Tampa Electric Co. v. Nashvill Coal Co., 365 U.S. 320, 327 (1961). Using this benchmark, AMR alleges in the FAC that Johnson & Johnson's contracts with GPOs and other hospital groups are unreasonable because they have resulted in substantial foreclosure of the relevant markets for trocars and clip appliers. (FAC, ¶¶ 4, 36, 62, 64, 65.)

For reasons explained below, the Court finds that AMR's allegations in this regard are sufficiently supported to withstand Novation's Motion to Dismiss.

In support of the Motion, Novation first argues that AMR has failed to allege that Novation had the motive or intent to exclude competition in the trocar and clip applier markets. It asserts that there is no evidence in this case of "a conscious commitment to a common scheme designed to achieve an unlawful objective," Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752, 764 (1984) and that it would be "irrational" for Novation, as an agent for buyers, to limit competition in the markets for trocars and clip appliers. (Mot. to Dismiss, pp. 9–11.) To the extent that Novation is asserting that it did not engage in "concerted action" as that term is understood in the context of Section 1 violations, the Court finds the case law cited by Novation distinguishable from the case at hand.[3] To the extent its argument is premised on the notion that AMR's allegations against Novation make no "economic sense," the Court disagrees. While it is certainly true that it is "inherently implausible" that a purchaser would conspire with a supplier in order to allow the supplier to charge noncompetitive prices, see Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1109 (7th Cir. 1984), special factors are present in this case. Novation is not a "buyer" in the traditional sense, but rather an agent for its member hospitals. (FAC, ¶ 32.) It also profited monetarily from its contracts with Johnson & Johnson. (Id. at ¶ 34.) As such, it does not follow from the cases cited by Novation that "it would be irrational for Novation to limit competition in the market for trocars and clip appliers" in this case. (Mot. to Dismiss, p. 11) In fact, the analysis of Dickson v. Microsoft Corporation, 309 F.3d 193 (4th Cir. 2002), seems more on point. In that case, the Fourth Circuit rejected an argument similar to Novation's, reasoning,

> [T]o the extent Compaq and Dell argue that it was against their economic interests to enter into § 1 conspiracies with Microsoft, we note that [the plaintiff] has alleged that Compaq and Dell received financial and other benefits in exchange for entering into the licensing agreements. These allegations are sufficient for purposes of Rule 12(b)(6) to demonstrate that a § 1 conspiracy was economically plausible.

Dickson, 309 F.3d at 204. Novation's first ground for dismissal is accordingly denied.

Second, Novation argues that AMR has failed to plead that the contract between Novation and Johnson & Johnson caused sufficient foreclosure of the relevant markets for trocars and clip appliers to be unreasonable. The Court disagrees. Per the FAC, Johnson &

---

[3] This is not a case in which there is no relevant evidence to support an allegation of conspiracy to restrain trade, for example. Cf. Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co., 141 F.3d 947 (9th Cir. 1998). To the contrary, it is a case in which the existence of a contract is both sufficiently pled and undisputed. Nor is Novation's participation here so passive as to make it analogous to the "gift" recipient in Virginia Vermiculite, Ltd. v. Historic Green Springs, Inc., 307 F.3d 277, 281–82 (4th Cir. 2002).

Johnson's contracts with the two largest GPOs, Novation and Premier, foreclose 65% of the relevant markets for trocars and clip appliers. (FAC, ¶ 45.) The Court finds that aggregating the foreclosure produced by these agreements between Johnson & Johnson and multiple buyers is appropriate, in spite of Novation's assertions to the contrary.[4] See Standard Fashion Co. v. Magrane-Houston Co., 258 U.S. 346, 357 (1922); Standard Oil & Standard Stations v. United States, 337 U.S. 293, 295, 308–09, 314 (1949); FTC v. Motion Picture Advertising Service, 344 U.S. 392, 394–95 (1953); see also XI Hovenkamp, Antitrust Law ¶ 1802d3 (1998). Moreover, even assuming aggregation were not the rule, the Court also finds that AMR's allegations regarding Novation's contract alone are sufficient to satisfy the second element of its Section 1 claim. The FAC alleges that Novation's contract with Johnson & Johnson forecloses an estimated 35% of the market. (FAC, ¶ 45.) The Court accepts this factual allegation as true, Everest & Jennings, 23 F. 3d at 228, and finds that it is sufficient to state a claim for relief. See, e.g., Standard Oil, 337 U.S. 293, 314; Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc., 676 F.2d 1291, 1304 (9th Cir. 1982). At this point in the proceedings, mindful of the fact that foreclosure arguments are inherently factual, the Court is unwilling to dismiss ARM's claim against Novation based on Novation's second argument alone.

Novation's Motion to Dismiss is accordingly denied. Fed. R. Civ. P. 12(b)(6).

---

[4] In this regard, the Court finds Novation's reliance on Dickson v. Microsoft Corporation, 309 F.3d 193 (4th Cir. 2002), misplaced. In that case, the plaintiffs alleged "two separate vertical conspiracies between Dell and Microsoft and Compaq and Microsoft." Id. at 200. It is therefore unsurprising that the Fourth Circuit considered the two conspiracies individually, id. at 205, 207, and held that the plaintiffs' claims were properly dismissed because they did not allege that either Compaq or Dell had market power on its own, id. at 208. Here, in contrast, AMR does not allege two separate conspiracies, but rather claims that Johnson & Johnson's exclusive dealing contracts with entities such as Novation and Premier foreclosed a substantial portion of the markets at issue.

MINUTES FORM 90  
CIVIL - GEN

Initials of Deputy Clerk   kjt