IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SUTURE EXPRESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-2760-RDR |
| | ) | |
| CARDINAL HEALTH, 200, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Defendants Owens & Minor Distribution, Inc. and Cardinal Health 200, LLC's Motion for Protective Order (ECF No. 71). For the following reasons, the Court hereby grants in part and denies in part Defendants' Motion.

**I.  Background**

This is an antitrust and unfair competition action brought by Plaintiff Suture Express, Inc., a company that purportedly specializes in the distribution of sutures and endomechanical ("endo") products to acute care customers. Defendants also distribute sutures and endo products, as well as a broad array of medical and surgical ("med-surg") supplies. Defendants are business competitors of Plaintiff, each other, and a number of non-parties. Plaintiff claims that Defendants have employed exclusionary practices by tying and bundling the sale of med-surg supplies to sutures and endo products to prevent acute care providers from dealing with Plaintiff. Plaintiff alleges that, in turn, this practice hinders its ability to compete in the marketplace.

On October 2, 2013, the Court entered a Scheduling Order in this matter. As set forth in the Scheduling Order, if the parties disagree about the scope or form of a protective order they may bring the dispute before the Court on an appropriate motion. Defendants timely filed the

present Motion for Protective Order, asking the Court to resolve issues relating to the scope of a protective order.

## II. Discussion

Plaintiff and Defendants agree that a protective order is necessary for this case. As further explained below, the Court also agrees. However, the dispute between the parties and the current issue before the Court pertains to an extra level of protection proposed in the parties' respective protective orders. Both parties agree that a two-tiered protective order is necessary in this antitrust litigation—the first tier for "Confidential" information and the more restrictive second tier for "Highly Confidential" information. In general terms, the "Highly Confidential" designation is limited to more sensitive information and accessible by a fewer number of persons compared to the "Confidential" category.

The parties agree on the information that may be designated as "Confidential."[1] Further, the parties substantially agree on the individuals who may access "Confidential" information.[2] The disagreement pertains to the information that may be classified as "Highly Confidential" and those who may access such information. In particular, the dispute between the parties focuses on

---

[1] *See* Defs.' Proposed Protective Order at ¶ 4(A), ECF No. 71-2; Pl.'s Proposed Protective Order at ¶ 4(A), ECF No. 71-3. Both proposed protective orders state:
> The designation "Confidential" shall be limited to information that the Source has determined, in good faith, contains, reflects, or reveals non-public, confidential, proprietary or commercial information that is not readily ascertainable through proper means by the public or the receiving party, to the extent that information either is the type of information that the Source normally attempts to protect from disclosure or is subject to privacy protection under federal, state or local law.

[2] *See* Defs.' Proposed Protective Order at ¶ 10(A), ECF No. 71-2; Pl.'s Proposed Protective Order at ¶ 10(A), ECF No. 71-3. The only difference between the individuals who the parties propose should have access to the "Confidential" information is found in in paragraph 10(A)(7) of the parties' respective proposed protective orders. Defendants' proposal states that "Confidential" information may be disclosed to: "consulting or testifying experts of any Party who are not current employees, officers or directors of any Party or any Party's affiliates and who have not served as an officer or director of any Party or any Party's affiliates ***since January 1, 2008***[.]" Defs.' Proposed Protective Order at ¶ 10(A)(7), ECF No. 71-2 (emphasis added). Plaintiff adopts the same language except for the temporal limitation. Plaintiff's proposal states ". . . ***in the last five years***" instead of ". . . ***since January 1, 2008***[.]" Pl.'s Proposed Protective Order at ¶ 10(A)(7), ECF No. 71-3 (emphasis added).

four items. First, the parties disagree about whether information relating to products, other than sutures and endo products, should be designated "Highly Confidential." Second, there is a disagreement about whether contracts, pricing, and rebate information not currently in force between a Defendant and its customer is "Highly Confidential." Third, the parties disagree about whether the catch-all category, "or similar highly sensitive and proprietary commercial information," should be included within the "Highly Confidential" definition. Fourth, there is a dispute about whether Andrew Rush, a member of Plaintiff's Board of Directors, and Defendants' in-house counsel should have access to "Highly Confidential" information.[3]

Set forth below are the parties' respective proposed definitions for "Highly Confidential" information:

**Plaintiff's proposal:**

> The designation "Highly Confidential" shall be limited to information that the Source has determined, in good faith, contains or reveals trade secrets; business plans and strategies; any current pricing or rebates for the sale of sutures and endomechanical products; confidential negotiations or current contract terms between a party and a nonparty related to the sale of sutures and endomechanical products; any draft agreements currently being negotiated; projected financial or pricing data; or planned or unpublished intellectual property applications.[4]

**Defendants' proposal:**

> The designation "Highly Confidential" shall be limited to information that the Source has determined, in good faith, contains or reveals trade secrets; business plans and strategies; pricing, rebate, or related information; confidential negotiations or contract terms between a party and a non-party; financial or pricing data; planned or unpublished intellectual property applications; or similar highly sensitive and proprietary commercial information.[5]

---

[3] The parties agree as to the remainder of the individuals who can have access to "Highly Confidential" information.

[4] Pl.'s Proposed Protective Order at ¶ 4(B), ECF No. 71-3.

[5] Defs.' Proposed Protective Order at ¶ 4(B), ECF No. 71-2.

A.      Legal Standard

Initially, the Court notes that there is no absolute privilege for confidential information.[6] Pursuant to Fed. R. Civ. P. 26(c), however, a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]" The decision to enter a protective order is within the court's discretion.[7] In fact, the Supreme Court recognizes that "[t]he trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[8] Despite this broad discretion, "a protective order is only warranted when the movant demonstrates that protection is necessary under a specific category set out in Rule 26(c)."[9] In addition, the party seeking a protective order bears the burden of establishing good cause.[10]

Regardless of whether the parties agree to certain provisions or not, courts must determine whether good cause is shown for the entire protective order, not just those in dispute.[11] "A special type of protective order, one that limits the disclosure, use, and dissemination of the

---

[6] *Sprint Commc'ns Co. v. Big River Tel. Co.*, No. 08-2046-JWL, 2008 WL 4401690, at *1 (D. Kan. Sept. 16, 2008).

[7] *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir. 1995).

[8] *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (internal citations omitted).

[9] *Herrera v. Easygates, LLC*, No. 11-CV-2558-EFM-GLR, 2012 WL 5289663, at *2 (D. Kan. Oct. 23, 2012) (citing *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003)).

[10] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010).

[11] *See Univ. of Kan. Ctr. for Research, Inc. v. United States*, No. 08-2565-JAR-DJW, 2010 WL 571824, at *4 (D. Kan. Feb. 12, 2010).

parties' confidential information, also requires a showing of good cause under Rule 26(c)."[12] For these types of protective orders, the party or parties seeking the protective order must provide a "concise but sufficiently specific recitation of the particular facts in this case that would provide the court with an adequate basis upon which to make the required finding of good cause[.]"[13]

      **B.     Good Cause to Enter a Two-Tiered Protective Order**

Before turning to the disputed provisions, the Court must initially determine whether good cause exists to enter a two-tiered protective order as proposed by the parties. Protection of certain information, by limiting disclosures to "Confidential" and "Highly Confidential," may well be warranted in this antitrust action. Plaintiff and Defendants each appear to be business competitors for the sale of sutures, endo, and a broad array of other med-surg products. This litigation likely involves the disclosure of confidential proprietary information as contemplated in Rule 26(c)(1)(G) that may impact each respective party's competitive position in the marketplace and may cause great harm if disclosed. It appears both practical and a cost-effective way to protect the parties' interests in their most sensitive information from a competitor by allowing the good faith designation of certain materials as "Highly Confidential" while the parties still comply with their discovery obligations.[14] The Court finds good cause to enter a two-tiered protective order for materials designated as "Confidential" and heightened protection for materials designated "Highly Confidential." The Court now turns to the particular provisions in dispute.

---

[12] *Bowers v. Mortg. Elect. Registration Sys.*, No. 10-4141-JTM-DJW, 2011 WL 3328524, at *4 (D. Kan. Aug. 2, 2011); *Layne Christensen Co.*, 271 F.R.D. at 244.

[13] *Bowers,* 2011 WL 3328524, at *4; *Layne Christensen Co.*, 271 F.R.D. at 244; Scheduling Order at 8, ECF No. 63; *see Aikens*, 217 F.R.D. at 534 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (the movant must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.").

[14] *Layne Christensen Co.*, 271 F.R.D. at 247 (finding the same).

## C. Scope of "Highly Confidential" Information

As explained above, the parties disagree about the scope of the "Highly Confidential" information, including: (1) whether information relating to products that are neither suture nor endo-related should be "Highly Confidential," (2) whether contracts, pricing, and rebate information not currently in force between Defendants and their customers are "Highly Confidential," and (3) whether the catch-all category "or similar highly sensitive and proprietary commercial information" should be included within the "Highly Confidential" definition.

### i. Other Med-Surg Products

Plaintiff argues that a "Highly Confidential" designation should only include information relating to sutures and endo products because a majority of its business focuses on these two products.[15] Thus, Plaintiff asserts that the sale or distribution of other med-surg products are not commercially sensitive and should be treated only as "Confidential," not "Highly Confidential."

Defendants disagree and argue that information related to other med-surg products should be designated as "Highly Confidential" because Plaintiff's entire claim rests on the manner in which Defendants sell their entire med-surg portfolio, not just sutures and endo products. Defendants assert that crafting a protective order exclusively for sutures and endo products risks disclosure of commercially sensitive information to a competitor. First, Defendants assert that each party directly competes with one another for the sale of sutures and endo products, as well as other med-surg products; including hemostasis, mesh, and pulse oximetry products. In addition, Defendants claim they are direct competitors among themselves as to the sale of a wide array of other med-surg products. Therefore, Defendants argue that sales and pricing information for all products should also be inaccessible to the other Defendant's key business

---

[15] Plaintiff notes that it also sells other surgical products, including hemostasis, mesh and pulse oximetry products. Pl.'s Mem. in Opp'n at 12 n.6, ECF No. 73. These products make up about 8 percent of Plaintiff' total sales. *Id.*

decisionmakers. Additionally, Defendants fear the potential of Plaintiff broadening its offerings to sell other med-surg products that are currently sold by Defendants.

After reviewing the parties' positions, the Court finds good cause to enter a protect order with a "Highly Confidential" category that includes information relating to sutures and endo products as well as other med-surg products. This antitrust case involves much more than the mere pricing of sutures and endo products by themselves. It also involves the pricing and contracts related to med-surg bundles sold by Defendants, which includes an array of other med-surg products.[16] Allowing access to this information to another competitor or potential competitor may harm Defendants. In addition, Plaintiff readily admits that it sells other med-surg products (i.e. hemostasis, mesh, and pulse oximetry products) also sold by Defendants. Restricting "Highly Confidential" information solely to sutures and endo products raises the potential of turning over highly sensitive commercial material to a party's competitor—possibly harming Defendants' position in the marketplace.[17] The potential harm is further exacerbated by the fact that both Defendants directly compete with each other as to the sale of an assortment of other med-surg products. Thus, the Court finds good cause to restrict this information from each party's respective key decisionmakers. The "Highly Confidential" category shall include pricing or contract information related to sutures and endo products and other med-surg products.

---

[16] *See* First Am. Compl. at ¶ 6-7, ECF No. 19 (stating that Defendants have suppressed competition by coercing acute care provides to not purchase sutures and endo products from Plaintiff by pricing med-surg product bundles below cost).

[17] *See, e.g.*, *A/R Roofing, L.L.C. v. CertainTeed Corp.*, No. 05-1158-WEB, 2005 WL 6794228, at *3 (D. Kan. Dec. 5, 2005) ("Although not manufacturing competitors, plaintiffs and [Defendant] North Pacific are certainly purchasers of [Defendant] CertainTeed shingles and the disclosure of sensitive pricing information arguably could place [Defendant] CertainTeed at a disadvantage in the marketplace, particularly in the context of future sales negotiations.").

### ii. Contracts, Pricing, and Rebate Information Not Currently in Force

Defendants' proposed "Highly Confidential" designation seeks to include both current and past contracts and pricing information. The parties do not dispute current contractual and pricing information should be designated "Highly Confidential." However, the parties disagree on whether past contract and pricing information between Defendants and their costumers that are no longer in force should receive the same designation. Plaintiff argues that disclosing such information would not harm Defendants because this historic information is not the basis upon which Defendants and Plaintiff currently compete. Plaintiff also contends that the historic information has gone "stale" and is no longer competitively sensitive. Defendants agree that certain information can lose competitive significance over time. Nonetheless, Defendants assert that their past contracts frequently form the basis for negotiations of subsequent contracts and can be used by Plaintiff for a competitive advantage. Defendants claim it would be impractical and inappropriate to draw an artificial temporal line around what can be "Highly Confidential" because determining the competitive significance of such historic information is very fact and circumstance driven.

The Court agrees that past contracts and related information may form a party's current business strategy and warrant protection.[18] However, business information substantially out of date unlikely merits protection.[19] A party seeking to protect such outdated information must

---

[18] *See Grand River Enters. Six Nations, Ltd. v. King*, No. 02 Civ 5068(JFK), 2009 WL 222160, at *2, *4 (S.D.N.Y. Jan. 30, 2009) (finding that historical information may remain competitively sensitive when it identifies trends and strategies which can be extrapolated out to the present day and show how a company intends to compete); *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 303 (N.D. Ill. 1993) (holding that historical product development plans require protection because they reveal substantial information about business strategy and current operations); *see generally United States v. Int'l Bus. Machs. Corp.*, 67 F.R.D. 40 (S.D.N.Y. 1975) (examining historical information to determine its current competitive value and whether it warrants protection).

[19] *JTS Choice Enters., Inc. v. E.I. Du Pont De Nemours & Co.*, No. 11-cv-03143-WJM-KMT, 2013 WL 791438, at *4 (D. Colo. Mar. 4, 2013); *see Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 891 (E.D. Pa.

establish the requisite present harm.[20] Even though this need not be shown on a document-by-document basis, the party seeking protection must at least set forth specific demonstration of facts for a court to make the required finding of good cause.[21] Here, the Court finds that Defendants have failed go beyond mere conclusory assertions. In fact, Defendants fail to direct the Court to a single instance in this matter where a historic contract or other related material contains commercially sensitive information which may cause present harm to Defendants if disclosed. Moreover, Defendants appear to be unsure to what extent sensitive past information truly exists.[22] The Court is only left to speculate as to whether this information does exist. As a result, Defendants have failed to show good cause for "Highly Confidential" protection of past contractual and pricing information at this time. If after Defendants gather such information and have a good faith belief that it contains commercially sensitive material, they may seek additional protection or modification of the Court's forthcoming protective order.

---

1981) ("An attempt to show that disclosure will indeed work a competitive disadvantage might be undermined if the information sought to be protected were stale.").

[20] *See Layne Christensen Co.*, 271 F.R.D. at 249 (A party "must also show that the disclosure of this information might be harmful, such as showing the competitive harm that would befall it by virtue of the disclosure of the trade secrets or other highly-confidential proprietary information." (internal citation omitted)); *Univ. of Kan. Ctr. for Research, Inc.*, 2010 WL 571824, at *7 ("[T]o establish the requisite harm, the moving party must show that disclosure of the trade secret or other similar information 'will result in a clearly defined and very serious injury.'"); *JTS Choice Enters., Inc.*, 2013 WL 791438, at *4 ("A party seeking to protect outdated information must make a specific showing of present harm.").

[21] *Bartholomees v. Signator Investors, Inc.*, No. 03-2081-GTV, 2003 WL 22843174, at *1 (D. Kan. Nov. 25, 2003) ("The agreement of all parties is not required to enter a blanket protective order as long as the party seeking protection makes some threshold showing of good cause to believe that discovery will involve confidential or protected information. This showing may be done on a generalized as opposed to a document-by-document basis.").

[22] *See* Defs.' Mem. in Supp. at 15-16, ECF No. 72 ("Because much of Defendants' historical data ***likely*** reveal Defendants' current competitive strategies and pricing information, that information cannot be deemed 'stale' . . . . ***And because the parties have not yet had an opportunity to study the full set of documents and data that Plaintiff seeks***, it is inappropriate to declare now a single date (or even multiple dates) beyond which such information should no longer be deemed competitively significant and Highly Confidential.") (emphasis added).

### iii. Catch-all Category

Defendants' proposed protective order also includes the category "or similar highly sensitive and proprietary commercial information" within the definition of "Highly Confidential." Defendants argue that this category is necessary because the parties are likely to produce categories of documents during discovery that are not contemplated by the current "Highly Confidential" definition. Defendants contend that flexibility is needed because it is impossible to predict each and every category of information at this time.

Protective orders should be narrowly tailored and entered only after a party sets forth good cause based up a particular demonstration of facts. Further, as set forth in this District's Guidelines for Agreed Protective Orders,

> [A] protective order must be narrowly tailored and not overbroad. It should include a sufficiently narrow identification of the categories of documents, information, items, or materials (which may include electronically created or stored information) that are subject to the protective order. Some examples are medical records, personnel files, and tax returns. Language such as "this protective order shall apply to all documents the party designates as confidential" or "this protective order shall apply to all business records" would be deemed too vague and overbroad. The protective order should clearly reflect that its provisions only apply to the named categories of documents, information, items, or materials specifically set forth in the protective order. The protective order should not cover information or documents that are available to the public or that have not been previously maintained in a confidential manner.[23]

The Court agrees that certain proprietary commercial material should be protected in this matter. The Court also recognizes that certain documents may arise during the course of

---

[23] Guidelines for Agreed Protective Orders for the District of Kansas, *available at* http://www.ksd.uscourts.gov/guidelines-for-agreed-protective-orders-district-of-kansas/; *see also A/R Roofing, L.L.C.*, 2005 WL 6794228, at *3 (declining to include a blanket authorization to designate "any other information" because the justification that "it is difficult to tell where discovery may venture at this stage of the case" is simply too vague.)

discovery that may need "Highly Confidential" protection but do not fit within the current definition. The inclusion of this provision, however, asks the Court to speculate as to what information this category may or may not encompass. In addition, this category does not narrowly identify the information it seeks to protect and is found to be overbroad and vague in this instance. As such, Defendants do not sufficiently establish good cause to support the inclusion of this catch-all category within the "Highly Confidential" category. The Court notes that nothing prevents Defendants from seeking additional protection at a later time if the need arises. In fact, both proposed protective orders include a provision allowing for the modification of the protective order at a later time.[24]

### D. Mr. Rush's Access to "Highly Confidential" Information

Defendants' proposed "Highly Confidential" classification would exclude Andrew Rush, a member of Plaintiff's Board of Directors, from accessing materials designated "Highly Confidential." In addition to being on the Board of Directors, Mr. Rush is also a Senior Managing Director and co-founder of Diamond Castle Holdings, LLC, a private equity investment firm of which Suture Express is a portfolio company.

Defendants argue that Mr. Rush is a competitive decisionmaker and may use Plaintiff's highly sensitive materials for purposes other than in this litigation. Defendants fear that Mr. Rush's position with Plaintiff creates a significant risk of inadvertent disclosure because he undoubtedly sits in the same room as those who are involved in competitive decisionmaking. Even if Mr. Rush has no significant role in Plaintiff's day-to-day business decisions, Defendants argue that he still has an unacceptable opportunity to inadvertently disclose highly sensitive material because he likely participates in Plaintiff's broad strategic decisions (e.g. business plans,

---

[24] *See* Defs.' Proposed Protective Order at ¶ 22, ECF No. 71-2; Pl.'s Proposed Protective Order at ¶ 22, ECF No. 71-3.

forecasts, and competitive industry research). Despite Mr. Rush's assurances to not disclose or use "Highly Confidential" information other than for this litigation, Defendants argue that he will be unable to erect a wall in his head to shield himself from using such information for a competitive advantage.

Defendants also claim that Mr. Rush's fiduciary duty owed to Plaintiff to disclose all information germane to a transaction creates a risk of inadvertent disclosure. Defendants further purport that Mr. Rush's position with Diamond Castle creates another risk of inadvertent disclosure because he presumably oversees and manages the business affairs of other companies, potentially Defendants' competitors in the healthcare industry. Defendants finally contend that it is not necessary for Mr. Rush to access "Highly Confidential" information because: (1) Plaintiff would still be able to assess the merits of this litigation without his access, (2) Mr. Rush is not uniquely qualified, and (3) Plaintiff has experienced outside counsel well versed in antitrust litigation.

Plaintiff opposes any prohibition against allowing Mr. Rush access to "Highly Confidential" material. Plaintiff purports there is a strong need for Mr. Rush's access because, as Mr. Rush's sworn declaration states, he is responsible for managing this litigation and is involved in all significant decisions (e.g. pleading and motion practice and evaluating settlement decisions). Allowing access, as Plaintiff argues, puts Mr. Rush in a better position to fully inform and aid Plaintiff in this litigation. Plaintiff further contends that Mr. Rush is unlikely to cause competitive harm because he is not a competitive decisionmaker. Mr. Rush declares that he only attends four board meetings a year and plays an insignificant role in day-to-day commercial decisions.[25] In addition, he declares that he is not involved in pricing decisions or contractual

---

[25] Decl. of Andrew Rush at ¶ 6, ECF No. 73-1.

relationships with Plaintiff's customers.[26] He also declares that he will only use the information categorized as "Highly Confidential" for the purpose of prosecuting this litigation only and will not disclose it to individuals who are not entitled to access.[27]

"A party seeking that its information only be revealed in a certain way, such as limiting who can view or access the materials, under . . . Rule 26(c)(1)(G) must first establish that the information sought is a trade secret or other confidential research, development, or commercial information."[28] The party "must also show that the disclosure of this information might be harmful such as showing the competitive harm that would befall it by virtue of the disclosure of the trade secrets or other highly-confidential proprietary information."[29] Once this initial burden is met by the party requesting confidential information only be revealed in a specified way, "the burden then shifts to the party seeking unrestricted disclosure to establish that such disclosure is relevant and necessary to the action."[30] As discussed above, the Court finds that the sensitive material in this matter is confidential proprietary information as contemplated by Rule 26(c)(1)(G). Therefore, the burden is on Defendants to show the harm associated by disclosing such information.

Where the protection sought is only to prevent certain identified individuals from viewing the materials, courts must balance the risk of inadvertent disclosure to competitors against the

---

[26] *Id.*

[27] *Id.* at ¶ 8.

[28] *Layne Christensen Co.*, 271 F.R.D. at 248.

[29] *Id.* at 249 (internal citation omitted).

[30] *Id*. at 249.

13

risk of prejudice to the other party's ability to prosecute or defend the present action.[31] When balancing these risks, courts should consider whether the prohibited individual "would be virtually unable to compartmentalize the information and not use the information to seek to gain an unfair competitive advantage."[32] Courts have used the "competitive decisionmaking" test when balancing the risks and a person's inability to compartmentalize competitive information.[33] This test looks at whether a person is a competitive decisionmaker by his or her "participation in pricing, product design, marketing or other decisions made in light of similar or corresponding information about a competitor."[34] A court must determine whether there is an unacceptable risk of or opportunity for inadvertent disclosure of confidential information.[35]

Courts should also consider whether prohibiting an individual's access to the information would hamper a party's ability to effectively proceed with and assess the merits of the litigation.[36] "This involves considering the individual's specific role in the litigation, whether his or her expertise is specialized and not widely available through the retention of other experts, and whether this specialized expertise is essential to the proper handling of the litigation."[37] For example, limiting access of in-house personnel who have substantial experience in a narrow field

---

[31] *Id.* at 249 ("the court must balance the need of the party seeking discovery of the . . . confidential information against the opposing party's claim of injury resulting from the disclosure."); *see In re Indep. Serv. Orgs. Antitrust Litig.*, No. CIV. A. MDL-1021, 1995 WL 151739, at *1 (D. Kan. Mar. 9, 1995) ("In determining the scope of a necessary protective order, we must balance the need for the confidential information against the risk of harm associated with disclosure. To warrant denying access to in-house counsel, the . . . plaintiffs must show a probability of serious risk to confidentiality." (internal citations omitted)).

[32] *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 501 (D. Kan. 2007).

[33] *In re Indep. Serv. Orgs. Antitrust Litig.*, 1995 WL 151739, at *1.

[34] *Id.* at *1 (internal quotation marks omitted).

[35] *Sprint Commc'ns Co.*, 2008 WL 4401690 at *2.

[36] *Layne Christensen Co.*, 271 F.R.D. at 249-50.

[37] *Id*. at 250.

that cannot be replaced in the "open market" could impair a party's ability to prosecute its claims.[38]

After weighing the competing interests, the Court finds that Mr. Rush should not be granted access to "Highly Confidential" information. Mr. Rush's position on Plaintiff's Board of Directors creates a significant opportunity for the inadvertent disclosure of "Highly Confidential" information.[39] This especially holds true because board meetings, however few Mr. Rush attends, are a place where competitive decisionmaking is involved. The Court recognizes that mere contact with competitive decisionmakers does not disqualify a person's access to confidential information.[40] However, Mr. Rush's position requires more than just mere contact with decisionmakers. Rather, he is one of the competitive decisionmakers by virtue of his positions, which likely require him to make competitive decisions to some extent. The Court does not question Mr. Rush's intention to abide by an order restricting the disclosure of "Highly Confidential" information. However, as numerous courts have recognized, "[i]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."[41] Mr. Rush's position both with Suture

---

[38] *See MGP Ingredients, Inc.*, 245 F.R.D. at 502.

[39] *See Meridian Enters. Corp. v. Bank of Am. Corp.,* No. 4:06CV01117 RWS, 2008 WL 474326, at *3 (E.D. Mo. Feb. 15, 2008) (limiting access to confidential information because counsel was a shareholder and on plaintiff's board of directors); *Norbrook Labs., Ltd. v. G.C. Hanford Mfg. Co.,* No. 5:03CV165(HGM/GLS), 2003 WL 1956214, at *5 (N.D.N.Y. Apr. 24, 2003) (limiting access to confidential information because counsel's role as a plaintiff's corporate secretary and on its board of directors creates a serious risk of inadvertent disclosure of confidential information).

[40] *Sprint Commc'ns Co.*, 2008 WL 4401690 at *4.

[41] *Sullivan Mktg, Inc. v. Valassis Commc'ns, Inc.*, No. 93 Civ. 6350(PKL), 1994 WL 177795, at *3 (S.D.N.Y. May 5, 1994) (quoting *FTC v. Exxon Corp.,* 636 F.2d 1336, 1350 (D.C. Cir. 1980)); *see EdiSync Sys. LLC v. Adobe Sys., Inc.*, No. 12-cv-02231-MSK-MEH, 2013 WL 561474, at *1 (D. Colo. Feb. 13, 2013); *Barnes & Noble, Inc. v. LSI Corp.*, No. C 11-02709 EMC(LB), 2012 WL 601806, at *2 (N.D. Cal. Feb. 23, 2012); *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010); *Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC*, Civil No. 3:08cv291, 2009 WL 606190, at *4 (W.D.N.C. Mar. 9, 2009); *Norbrook Labs. Ltd.*, 2003 WL 1956214 at *5.

Express and Diamond Castle Holdings creates a major risk and unacceptable opportunity for the inadvertent disclosure of information, regardless of whether he is involved in day-to-day decisionmaking.

In addition, the Court finds that Mr. Rush is not uniquely necessary in that Plaintiff would not be prejudiced or unable to effectively proceed with this litigation if he was prohibited from accessing "Highly Confidential" information. Mr. Rush's self-serving declaration informs the Court that he is one of the Board Members responsible for managing this litigation and access to "Highly Confidential" information would put him in a better position to fully inform and aid Plaintiff.[42] He also expects to offer meaningful assistance to outside counsel in conducting this litigation.[43] However, this does not appear to rise to the level of being uniquely qualified that would impair Plaintiff's ability to effectively proceed with this litigation.[44] For instance, in *Medtronic Sofamore Danek, Inc. v. Michelson*, the court found that where technology was created by defendant, he is "uniquely qualified" to determine what devices and methods are covered by the disputed license and purchase agreements.[45] Based upon the foregoing analysis, the Court finds that Defendants have shown that competitive harm is likely if "Highly Confidential" information is accessible by Mr. Rush. Therefore, good cause is shown to enter a protective order that limits Mr. Rush's access to such information.[46]

---

[42] Decl. of Andrew Rush at ¶ 6, ECF No. 73-1.

[43] *Id.*

[44] *See MGP Ingredients, Inc.*, 245 F.R.D. at 502 (allowing access to in-house personnel who had substantial experience in a narrow field that cannot be replaced in the open market).

[45] No. 01-2373-GV, 2002 WL 33003691, at *3-4 (W.D. Tenn. Jan. 20, 2002).

[46] The Court notes that it also seeks to refrain from endorsing a situation where Mr. Rush must abide by a protective order that may directly conflict with his fiduciary duties.

### E. In-House Counsel's Access to "Highly Confidential" Information

Plaintiff argues, in the alternative, that if Mr. Rush is not provided access to "Highly Confidential" information, then Defendants' in-house counsel should also be barred from accessing such information. Defendants assert that this argument of symmetry does not apply in light of the significant differences between a board member and in-house counsel. The Court agrees.

Courts have allowed protective orders that limit access to highly confidential information to outside counsel while restricting access by in-house counsel.[47] However, "[a] determination of whether an unacceptable opportunity for inadvertent disclosure exists should not be based solely on an attorney's status as in-house or retained and should instead be made in light of the particular counsel's activities and relationship with the party."[48] To do this, courts should look at the particular counsel's involvement in competitive decisionmaking.[49] Plaintiff, as the party resisting disclosure, has the burden to show a probability that disclosure to Defendants' in-house counsel will have competitive harm.[50] "Categorical arguments that a party will be harmed by the disclosure are insufficient."[51]

In this case, Defendants assert that their in-house counsel do not hold any significant role in commercial decisions. Thus, unlike Mr. Rush, these attorneys are not in situations requiring the compartmentalization of competitive information or hold positions that may use such information for a competitive advantage. In addition, Defendants' in-house counsel are licensed

---

[47] *See Learjet Inc. v. MPC Prods. Corp.*, No. 05-1074-MLB-DWB, 2007 WL 2287836, at *5 n.4 (D. Kan. Aug. 8, 2007).

[48] *Sprint Commc'ns Co.*, 2008 WL 4401690 at *2.

[49] *Id.*

[50] *Id.*

[51] *Id.*

and practicing attorneys who must abide by the Code of Professional Conduct and are subject to sanctions.[52] Based upon the limited information provided by Plaintiff and notable differences between Mr. Rush and Defendants' in-house counsel, the Court finds that Plaintiff has failed to meet its burden. Particularly, Plaintiff failed to show that Defendants' in-house counsel are competitive decisionmakers or present an unacceptable risk of or opportunity to inadvertently disclose "Highly Confidential" information. The Court therefore finds that Defendants' in-house counsel shall have access to "Highly Confidential" information.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendants Owens & Minor Distribution, Inc. and Cardinal Health 200, LLC's Motion for Protective Order (ECF No. 71) is hereby granted in part and denied in part.

**IT IS FURTHER ORDERED** that the parties resolve the minor discrepancy addressed in footnote two of this Memorandum and Order and inform the Court within seven (7) days from the date of entering this Memorandum and Order. Thereafter, the Court will enter a protective order consistent with this Memorandum and Order in a separate filing.

**IT IS SO ORDERED.**

Dated this 31st day of December, 2013, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge

---

[52] *See Sprint Commc'ns Co.*, 2008 WL 4401690 at *5 ("In-house counsel, like retained counsel, are officers of the court, are bound by the same code of professional responsibility, and are subject to the same sanctions."); *see also Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp. 20, 22-23 (D. Del. 1988) (allowing access of confidential information to in-house counsel based in part on counsel's professional obligations).