IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SUTURE EXPRESS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-2760-DDC |
| | ) | |
| CARDINAL HEALTH 200, LLC, and | ) | |
| OWENS & MINOR DISTRIBUTION, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM & ORDER

This matter comes before the court upon Defendants' Motion to Lift Confidentiality

Designations of Certain Documents Produced by Suture Express and to Modify Protective Order

(ECF No. 205/206).  Defendants seek to de-designate several e-mails, which are currently

designated 'confidential' or 'highly confidential' by Suture Express for the limited purpose of

allowing Defendants' in-house counsel to review the documents.  Defendants also seek

modification of the protective order to allow for the use of those documents as the basis to

investigate potential claims against Suture Express and some of its employees.

### I.      Background

This is an antitrust and unfair competition action brought by plaintiff Suture Express,

Inc., a company that specializes in the distribution of sutures and endomechanical ("endo")

products to acute care customers.  Defendants also distribute sutures and endo products, as well

as a broad array of medical and surgical ("med-surg") supplies.  Defendants are business

competitors of plaintiff, each other, and a number of non-parties.  Plaintiff claims that defendants

have employed exclusionary practices by tying and bundling the sale of med-surg supplies to

sutures and endo products to prevent acute care providers from dealing with Plaintiff.  Plaintiff

alleges that, in turn, this practice hinders its ability to compete in the marketplace.

On October 2, 2013, the court entered a scheduling order in this case.[1]  It allowed the parties to submit a jointly proposed protective order, or if the parties disagreed about the scope or form of the protective order, to file motions and memorandum with each party's proposed order by October 10, 2013.[2]  The parties were unable to submit an agreed protective order; specifically, they could not agree on the scope of confidentiality designations and which individuals should have access to which designations.[3]  On January 7, 2014, the court entered a protective order that adopted the parties' tiered-confidentiality designation scheme, which distinguished between 'confidential' and 'highly confidential' information, and specified to whom access to designated documents would be granted.[4]  On February 25, 2014, the court granted the parties Joint Motion to Amend Protective Order,[5] which added specific provisions dealing with transactional sales data for med-surg products and generally designated such data 'highly confidential'.[6]  On April 11, 2014, the court granted the parties' Unopposed Motion to Amend the Protective Order,[7] which removed the distinction between current and non-current contracts, pricing, rebates and related information for reasons of designating information as either 'confidential' or 'highly

---

[1] Scheduling Order, ECF No. 63.

[2] Scheduling Order at 7–8, ECF No. 63.

[3] J. Mot. for an Order Am. Scheduling Order and Setting Deadline for Defs. to File Mot. Concerning Protective Order and Setting Br. Schedule at 2, ECF No. 69.

[4] Protective Order, ECF No. 88.

[5] Joint Mot. to Amend/Correct Protective Order, ECF No. 104.

[6] Order, ECF 105.

[7] Unopposed Mot. to Am. the Protective Order, ECF No. 112.

confidential'.[8]  Finally on June 24, 2014, the court granted the parties' Joint Motion for Third

Amended Protective Order,[9] in which the parties agreed to remove language in the definition of

'highly confidential' that limited the designation to "confidential negotiations or contract terms

between a party and a non-party."[10]  The parties' had begun to subpoena confidential

negotiations and contract terms from third parties, who had expressed a desire to have their

information included within the definition of 'highly confidential'.[11]  The parties' Third

Amended Protective Order is the controlling document for this dispute.[12]

    The current dispute revolves around a series of e-mails between two individuals and

members of Suture Express's management team.[13]  These two individuals previously worked for

defendants Owens & Minor or Cardinal Health, and now work for Suture Express.  Mr. Pedaci

signed a separation agreement when his employment with Defendant Cardinal Health ended.

Among other things it required him "not to take, use, disclose, alter, or copy [Cardinal Health's]

proprietary or confidential information or trade secrets."[14]  Despite the agreement, Mr. Pedaci

---

[8] Order, ECF No. 113.

[9] J. Mot. for Protective Order (Third Am.), ECF No. 140.

[10] Order, ECF No. 141.

[11] J. Mot. for Protective Order (Third Am.), ECF No. 140.

[12] Third Am. Protective Order, ECF No. 142.

[13] Defs.'  Mot. to Lift Confidentiality Designations of Certain Docs. Produced by Suture Express and to Modify Protective Order, ECF Nos. 205-3–205-13, Exhibits B–L.

[14] Defs.'  Mot. to Lift Confidentiality Designations of Certain Docs. Produced by Suture Express and to Modify Protective Order at 2, ECF No. 205.

allegedly passed confidential information on to Suture Express management anyway.[15] Specifically, he allegedly sent Suture Express management Cardinal's compensation plan for sales representatives; a power point presentation that summarized Cardinal's sales strategy; at least one of Cardinal's actual client contracts; presentations that analyze some of Cardinal's market competitors; and its Group Purchasing Organization contracts.[16]  All of this information was labeled by Cardinal Health as confidential or for internal use only, and Mr. Pedaci admitted at his deposition that he knew at least some of the information was highly confidential.[17]  Some of this confidential information was then e-mailed among members of Suture Express's management team, largely without any added discussion.[18]

The second employee, Steve Boyer, previously worked for defendant Owens & Minor. He allegedly sent Suture Express management a report detailing defendant's efforts to manage inventory and control costs; a corporate agreement summary that detailed pricing, terms of confidential distribution contracts, price and discount offerings, service commitments, administrative fees; and potentially a customized velocity report.[19]  According to defendants, the only one of these e-mails that contains information that might be considered confidential to Suture Express is Exhibit L, an e-mail between Mr. Boyer and members of Suture Express's

---

[15] Defs.' Mot. to Lift Confidentiality Designations of Certain Docs. Produced by Suture Express and to Modify Protective Order, ECF No. 205-3–205-6, Exhibits B–E.

[16] *Id.*

[17] Defs.' Mot. to Lift Confidentiality Designations of Certain Docs. Produced by Suture Express and to Modify Protective Order at 3, ECF No. 205.

[18] Defs.' Mot. to Lift Confidentiality Designations of Certain Docs. Produced by Suture Express and to Modify Protective Order, ECF No. 205-7–205-10, Exhibits F–I.

[19] Defs.' Mot. to Lift Confidentiality Designations of Certain Docs. Produced by Suture Express and to Modify Protective Order, ECF No. 205-11–205-13, Exhibits J–K.

management team.[20]  Defendant Owens & Minor proposes to de-designate a redacted version of this e-mail (identified as Exhibit L), leaving only the body of Mr. Boyer's e-mail which contains his description of Owens and Minor's velocity report, how it was used, and agreeing to see if he has a copy of one to turn over to Suture Express.

The Third Amended Protective Order provides a procedure for challenging confidentiality designations.[21]  Once the parties challenging a designation have sent written notice detailing the grounds for de-designation, the other party has responded, and the parties have met and conferred without resolving the dispute, they may move the court to lift the designation.[22]  The parties have followed the required procedure.  Therefore, the defendants' motion regarding the specific e-mails discussed above is appropriate.

## II.    Discussion

Fed. R. Civ. P. 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way."[23]  The district court necessarily has broad discretion over the control of

---

[20] Defs.'  Mot. to Lift Confidentiality Designations of Certain Docs. Produced by Suture Express and to Modify Protective Order, ECF No. 205-13, Exhibit L.

[21] Third Am. Protective Order at 7, ECF No. 142.

[22] *Id.*

[23] Fed. R. Civ. P. 26(c).

discovery, including the entry and modification of protective orders.[24]  However "a protective

order is only warranted when the movant demonstrates that protection is necessary under a

specific category set out in Rule 26(c)."[25]  "The starting point for interpretation of a protective

order lies in its plain language."[26]

The court entered a protective order under Fed. R. Civ. P. 26(c)(1)(G) because the

parties, who are market competitors, demonstrated good cause to protect their trade secrets,

confidential research and development, and other commercial information from being disclosed

to each other or the public.  The plain language of the order covers the parties' "confidential

information, including pricing, confidential contract terms and negotiations, business strategies,

and financial information."[27]  'Confidential' information is further defined in the protective order

as "information that the Source has determined, in good faith, contains, reflects, or reveals non-

public, confidential, proprietary or commercial information that is not readily ascertainable

through proper means by the public or the receiving party . . ."[28]  'Highly Confidential' is further

defined as only "information that the Source has determined, in good faith, contains or reveals

trade secrets; business plans and strategies; any pricing rebate, or related information;

confidential negotiations or contract terms; draft agreements; projected financial or pricing data;

---

[24] *Sec. and Exch. Comm'n v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010).

[25] *Herrera v. Easygates, LLC*, No. 11-CV-2558-EFM-GLR, 2012 WL 5289663, at *2 (D. Kan. Oct. 23, 2012) (citing *Aikens v. Deluxe Fin. Servs. Inc.*, 217 F.R.D. 533, 535 (D. Kan. 2003)).

[26] *Id.* (citing *City of Hartford v. Chase*, 942 F.2d 130, 134–35 (2d Cir. 1991)).

[27] Third Am. Protective Order at 1, ECF No. 142.

[28] *Id.* at 2.

planned or unpublished intellectual property applications."[29]  The confidentiality designations

protect the parties from the improper disclosure of their own protected information.

### a. Motion to lift confidentiality designations

The parties' Third Amended Protected Order requires the party opposing de-designation

of protected documents to bear the burden of proof to justify designation.[30]  Suture Express does

not meet this burden.  Suture Express only discusses a few of the documents defendants wish to

de-designate.  Suture Express argues that the e-mails involve "business plans and strategies" and

are therefore protected.  However, e-mails sent between Suture Express employees are not

automatically protected documents.  Suture Express bears the burden of showing that the specific

e-mails sought contain its protected information.  It has provided no evidence that the

information contained in the e-mails at issue is confidential or highly confidential information

belonging to Suture Express.  Instead, it seems that defendants seek to de-designate e-mails that

contain little or no information in the subject line or body, except perhaps a description of the

attachments, which contain defendants' *own* information.

The fact that the e-mails were sent among Suture Express employees and management

team members, does not make them protected without a showing that they contain information

covered by the protective order.  Suture Express does not show that the e-mails contain its trade

secrets, confidential research, development, or commercial information.  Instead, they appear to

show that Suture Express employees obtained and distributed the defendants' information among

---

[29] Third Am. Protective Order at 2, ECF No. 142.

[30] Third Am. Protective Order at 7, ECF No. 142.

themselves.  With the exception of defendants' documents affixed as attachments to these e-mails, this activity is not covered by the scope of the protective order.  The e-mails listed as Exhibits B through L (redacted version) shall be de-designated for the purposes of this litigation. Defendant Owens & Minor shall be granted access to the information relating to its former employee Mr. Boyer.  Defendant Cardinal Health shall be granted access to the information relating to its former employee Mr. Pedaci.

### b.  Motion to modify the protective order

The defendants also seek to modify the scope of the Third Amended Protective Order. The language at issue currently states "[a]ll information produced or discovered in this Litigation, regardless of whether designated confidential, shall be used solely for the prosecution or defense of this Litigation, unless that information is or has become publicly available without a breach of the terms of this Order."[31]  Defendants propose a modification "to use [Exhibits B through L (redacted version) discussed above] and any other stolen Cardinal Health or Owens & Minor documents that either party discovers, as the basis for potential suits against Suture Express and, in the case of Cardinal Health, a repayment demand against Mr. Pedaci."[32]  In response, Suture Express cites a number of cases for the proposition that "courts in this District have declined to modify protective order provisions to permit disclosure of documents for use in support of claims in other litigation[]."[33]

---

[31] Third Am. Protective Order at 1, ECF No. 142.

[32] Defs.' Mot. to Lift Confidentiality Designations of Certain Docs. Produced by Suture Express and to Modify Protective Order at 16, ECF No. 205.

[33] Pl.'s Mem. in Opp'n to Defs.' Mot. to Lift Confidentiality Designations of Certain Docs. Produced by Suture Express and to Modify Protective Order, ECF No. 211.

The authority Suture Express relies on for this assertion involves collateral litigants, not parties to the litigation where the protective order was issued.  The only authorities plaintiff cites that are actually from this district involve collateral litigants seeking to intervene to modify protective orders after the litigation in which the protective order was entered had been resolved.[34]

Courts have more commonly addressed this issue in the context of a motion for sanctions alleging violations of a protective order that have already occurred.  In such cases, courts have found that "mining" a party's "confidential documents with an eye toward evaluating the documents' potential relevance and possible use in other litigation . . . would violate" a protective order such as the one in this case.[35]  However, in such cases, courts have also noted that "any such violation would be devilishly hard to police."[36]  In this case, the court is asked to proactively modify the protective order to allow defendants to use both Exhibits B through L (redacted version) and "any other stolen . . . documents that either party discovers, as the basis for potential suits" that have not yet been filed.[37]

---

[34] *Holmes v. United Parcel Serv., Inc.*, No. 04-2315-KHV-DJW, 2006 WL 1642719, at *3 (D. Kan. Feb. 16, 2006); *Cunningham v. Subaru of America, Inc.*, 155 F.R.D. 205, at *206, *207 (D. Kan. May 3, 2004).

[35] *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 280 F.R.D. 586, 596 (D. Kan. 2012) (citing *In re eBay Seller Antitrust Litigation*, No. C07-01882, 2010 WL 2106004, at *1  (N.D. Cal. May 25, 2010) (recognizing that the court in the *eBay* case did not determine whether such mining had occurred)).

[36] *See, e.g.*, *In re eBay Seller Antitrust Litigation*, No. C07-01882, 2010 WL 2106004, at *1  (N.D. Cal. May 25, 2010).

[37] Defs.'  Mot. to Lift Confidentiality Designations of Certain Docs. Produced by Suture Express and to Modify Protective Order at 16, ECF No. 205.

A protective order may be modified "by the court on its own motion or on motion of any Party.[38] "And modification of a protective order, like its original entry, is left to the discretion of the district court."[39]  In *United Nuclear Corporation v. Cranford Insurance Company*, the Tenth Circuit affirmed a district court's decision to grant intervening nonparties' request to modify a protective order and allow them access to discovery materials subject to that protective order for use in collateral litigation against the same defendants.[40]  It approved the Seventh Circuit's standard for determining when a protective order's integrity should be modified in favor of avoiding duplicative discovery in collateral litigation.[41]  The standard the Tenth Circuit approved provides that

> Where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification.  Once such prejudice is demonstrated, however, the district court has broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order.[42]

The Tenth Circuit noted that the court responsible for the original protective order may grant access to such discovery and eliminate the need for duplicative discovery, but whether the information is discoverable, relevant, or privileged in subsequent litigation is a determination for

---

[38] Third Am. Protective Order at 10, ECF No. 142.

[39] *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990).

[40]  905 F.2d 1424, 1428 (10th Cir. 1990).

[41] *United Nuclear Corp.*, 905 F.2d at 1428 (10th Cir. 1990) (affirming a District of New Mexico Court's decision to grant collateral litigants access to discovery under its protective order by modifying a protective order that "designated all materials produced in discovery as confidential." *Id.* at 1427).

[42] *Id.* (quoting *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980).

the collateral court.[43]   This means that any defendants in any potential collateral suits retain the right to object to the use of such discovery in any future suit.

As discussed above, the court has already determined that Exhibits B–L are de-designated for purposes of this litigation.  The court notes that the information at issue in those exhibits—e-mails containing defendants' own protected information—is not protected from defendants themselves.  The only information that is not defendants' is that evidencing that e-mails containing defendants' confidential information were distributed among Suture Express employees, including those who previously worked for defendants.  This information would undoubtedly lead to duplicative discovery in any potential suit defendants may wish to bring. Additionally, Suture Express makes no meaningful argument suggesting that its substantial rights would be tangibly prejudiced by a modification allowing defendants to use this information outside this litigation.  The protective order is hereby modified to exclude Exhibits B through L (redacted version) so that they may be used by defendants to investigate and pursue any potential collateral claims.

The more difficult question is whether defendants should be given carte blanche to "mine" through all the information produced in this case in search of additional information to support their potential claims.  Defendants' "counsel need not wipe their memories clean or somehow compartmentalize the mental impressions formed in the course of the instant action."[44] But they may not conduct an extensive review of all discovery produced in this case for information to support any potential claims they wish to bring in separate litigation.  Defendants

---

[43] *United Nuclear Corp.*, 905 F.2d at 1428 (10th Cir. 1990).

[44] *In re eBay Seller Antitrust Litigation*, No. C07-01882, 2010 WL 2106004, at *1 (N.D. Cal. May 25, 2010).

may seek to discover additional information necessary to support any potential new claims as the presiding court may allow in those cases. As such, the modification extends only to Exhibits B through L (redacted version).

The court has determined that the protective order's language prohibiting dissemination of information discovered in this litigation from being used for anything but the prosecution or defense of this litigation is not intended to immunize individuals or even parties from subsequent suits, should information justifying such action become known during discovery. Defendants are not required to ignore information that they discovered in this case that gives them a good faith basis to raise other potential claims against the plaintiff or others. This right should not, however, be abused as an all-out "mining" effort to support claims not at issue in this case and it does not allow defendants to use specific information discovered in this case in collateral litigation except as expressly provided herein. Although the protective order may require defendants to re-discover some information they had access to in this case in any subsequent litigation, it does not require them to turn a blind eye to potential claims.

Accordingly, the protective order is modified to exclude Exhibits B through L (redacted version). Defendants' may use those documents, relating to their respective former employees, in any potential suits against Suture Express or others. The modification does not extend to allow defendants' counsel to "mine" through the discovery in this case to find all information that could potentially support these new claims. The Motion for Leave to File Under Seal Request for Oral Argument (ECF No. 219) is denied as moot.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendants' Motion to Lift Confidentiality Designations of Certain Documents Produced by Suture Express and to Modify Protective Order

(ECF No. 205/206) is granted in part and denied in part.  The confidentiality designation placed on Exhibits B through L (redacted version) shall be lifted and the protective order is modified only to allow Exhibits B through L (redacted version) to be used outside this litigation.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Under Seal Request for Oral Argument (ECF No. 219) is denied as moot.

**IT IS SO ORDERED.**

Dated this 24th day of August, 2015 at Topeka, Kansas.

s/ K. Gary Sebelius_____
K. Gary Sebelius
U.S. Magistrate Judge

13